DORÉ, Judge.
This is an action for damages against Maurice J. Mayer, owner of the Beauregard Hotel, situated in the City of Baton Rouge, for alleged personal injuries sustained by plaintiff on July 12, 1940, as a result of his falling down some steps leading from the second floor of the building to the vestibule downstairs. The suit is based on the main allegations that the defendant was guilty of negligence in that the steps of his hotel constituted a trap because they were built in such a manner as not to have any hand rail, and in that they were poorly lighted, and in that, principally, the rubber matting on these steps were in a condition of disrepair; that as a result of the condition of these steps, the plaintiff, while descending, caught his right toe in a piece of worn out rubber matting, causing him to lose his balance, and finally, to fall at the foot of the- steps, resulting in personal injuries to his left hand and arm. Plaintiff alleges that as he lost his balance, due to stumbling on the worn out mat of rubber, he -reached his left hand out, being left-handed, and ran it along the wall to steady himself, but that since said wall had no hand rail,, he was unable to catch hold and stand upright and was unable to stop his speed sufficiently to regain his balance, with the. result that as he approached the bottom of the stairs, realizing that he was going to hit the door of the four foot vestibule below, in an effort to protect himself, he threw his left arm in front of his face with his elbow, flexed, and when he fell forward at the bottom of the stairs, his elbow struck the facing of the door.
As aforesaid, the negligence of the defendant is alleged to- consist of permitting the rubber mat, or mats, to remain on the steps in a worn out condition, in failing to furnish a hand rail, and in failing to keep the stairway properly lighted.
Plaintiff’s petition was first met with an exception of no cause or right .of action which was sustained by the District Court. This exception was based upon the contention that the plaintiff was a mere licensee to whom defendant owed only the duty not to wantonly and purposely injure him. This judgment of the District -Court sustaining the exception was appealed to this Court, and was reversed by this Court for the reason that we found the allegations of the petition sufficient to permit the plaintiff to introduce evidence that the stairs were a trap or that the plaintiff was a social invitee alt the hotel. See Williams v. Mayer, La.App., 4 So.2d 71.
On the remand, the defendant denies that he was guilty of any negligence whatsoever, and further denies that the injuries alleged to have bgen sustained by plaintiff, occurred as a result of a fall down the aforesaid stairway.
In the alternative, he alleges that if said injuries were'.received as a result of a fall at the hotel,, the same were the direct re- *666 suits of plaintiff’s wilful intoxication, which caused him to lose his balance while coming down the steps, and that there was no causal connection between the alleged accident or injury and the condition of defendant’s premises at the time of the accident.
In the further alternative, defendant alleges that the plaintiff came upon the premises as a trespasser and without the invitation of the defendant or of any of defendant’s paying guests, and that the defendant therefore owed the plaintiff no duty except to refrain from wilfully and wantonly injuring him.
In the further alternative, defendant alleges that plaintiff was well acquainted with the premises prior to July 12, 19'4(J, and that he therefore assumed any risk in connection with the steps.
In the further alternativé, defendant alleges that as plaintiff was about to descend the steps at the time of said accident, one of his employees observed his intoxicated condition and offered to assist him down the stairs, but that such proferred assistance was refused, and that plaintiff chose consequently to assume the risk of descending without help.
After trial of the case on the merits, the District Court, for written reasons assigned, rejected plaintiff’s demands at his costs. The plaintiff has appealed.
In his written reasons for judgment, the trial judge states:
“My conclusion regarding the condition of the steps is, (1) that plaintiff has not shown with a reasonable degree of certainty that they were dangerous even if some of the rubber mats were worn; (2) that even if dangerous, Williams’ condition was not such as would enable him to say with any degree of certainty that one or more of the broken mats caused him to get off balance and later fall. Rather, I am convinced that the proximate cause of plaintiff’s imbalance and the accident was his intoxication.
“The report of Dr. Hirsch to Dr. George that when plaintiff came to the hospital after the accident, he apparently had been drinking, lends credence to the testimony of Hale and Ringgold. True Dr. Hirsch did not say he was drunk, but he did say he had been drinking.
“Being unconvinced that the evidence shows with legal certainty that any act of defendant caused damage to the plaintiff obliging him to repair it, I am constrained to dismiss this suit. Plaintiff was charged with the duty of showing fault on the part of defendant by a preponderance of the evidence and that his injuries resulted solely from such fault which in my opinion he has failed to do.”
The facts show that on the date of the alleged accident the plaintiff, an employee of Standard Oil Company, was on an off-day and that he went to town at about 12:00 o’clock, met a friend, had a drink or two with him and then had lunch at about 1:00 o’clock; that, thereafter, he probably had some more to drink, and met another acquaintance, was invited to a poker game in the room of a Mr. Hale, on the second floor of the Beauregard Hotel, owned by defendant; that he went to said poker game at about 3:00 P. M., and remained there until 7:00 P. M., and that upon leaving the game, he started down the stairs, and as he reached the 16th step (according to his testimony) from the bottom, he lost his balance and fell or stumbled to the bottom.
In so far as the steps are concerned, the evidence clearly shows that they were wooden steps three feet in width, and that there were no hand rails. Plowever, it is shown that on the right side of the steps there was some wainscoting, which could be used as a hand rail. The evidence also shows that the steps had been supplied with thin rubber mats some eight or ten years prior to the alleged accident; that some of these rubber mats had through the years been worn out to the extent that some steps were entirely devoid thereof, and others had pieces here and there, and still others, had been replaced by new mats. There is no convincing evidence in the record, outside of plaintiff’s own self-serving testimony, that these mats were in any condition to cause the tripping of anybody. Plaintiff states that his toe was caught in a piece of mat which was curled up, but that is not *667 borne out by the evidence, nor does it appear reasonable to suppose that this thin rotten matting, even if curled up, would have sufficient strength or resiliency to cause tripping. In so far as the lighting of the steps is concerned, plaintiff would have the Court believé that for that purpose there was only one small light of about 40 Watts, but the preponderance of the'testimony, including the testimony of Mr. Hale, In whose room the poker game took place, •and who had been a paying guest of the hotel for years, is to the effect that there was a light at the top of the stairs and at the bottom, and that, both of said lights were ISO to 200 Watt bulbs, and that, consequently, the stairway was well lighted. We fail to see where there is any proof that the steps were in any way dangerous for a reasonably prudent person.
In so far as the other part of the trial judge’s conclusion to the effect that the proximate cause of plaintiff’s fall was his intoxication, it seems clear from the evidence, that his conclusion is correct. The plaintiff himself admits that on the day of the accident, and prior to going to Mr. Hale’s room, he had one or two or three or four drinks, and that after arriving at Hale’s room, he continued to drink out of half pints purchased by the poker players. The number of drinks that he had cannot be determined definitely from the evidence, but as testified by Mr. Hale, he was “happy drunk’’1- or “pretty drunk” when he arrived at the game, and it seems reasonable to say that he stayed in at least that condition after arriving at the game for the simple reason that he and the other players kept sending the Negro porter for additional whiskey as the game progressed. ■ The Negro po-rr ter’s statement was accepted as his evidence and reads as follows:
“Mr. Williams came to the hotel about three o’clock in the afternoon and went to Mr. Hale’s room. In the next three hours 'I answered the room call bell five times, and each time Mr. Williams sent me out for a half-pint. I bought and gave him five half-pint bottles of whiskey.
“Between six and seven o’clock Mr. Williams left Mr. H'ale’s room and went to the men’s toilet. He was drunk. I asked him if he could make it all right and he said: ‘Yes, boy, I’m all right.’ I went downstairs to the street entrance and stood there. In a few minutes Mr. Williams started to come down the steps. I turned to see who it was, then turned' back toward the street, then back again. Mr. Williams was then about four steps from the bottom and was falling. I ran back to the steps to catch him and his head fell on my shoulders and before I could do anything else he sank down on the steps. His arm was under him, the bottle of whiskey in his pocket broke and the whiskey r-an all over the floor. I .picked him up and sat him on the steps. I asked him if he‘was hurt and he said: ‘No,'I’m all right.’ He sat on the steps until I swept up the broken glass and mopped up the whiskey, and then I went to Mr. Hale’s room and two men came out. and down stairs to help him. When they came down Mr. Williams was groaning and they took him away in a taxi.”
It is very true that plaintiff himself and one or two of his friends testified that he had merely been drinking and that he was not intoxicated at the time that he descended the stairway; but, at least, they admitted that he was drinking, and in the light of the testimony of Mr. Hale, and the Negro porter, and the circumstances (the fact that he was on a holiday and having a good time), clearly show that the preponderance o-f the evidence is to the effect that he was intoxicated, or at least under such influence of alcohol as to constitute the proximate cause of his fall.
Finding no manifest- error in the conclusion of the trial judge, set forth herein-above, it seems unnecessary to consider the other defenses set forth in this case, such as that plaintiff was a trespasser and that such injuries as he may have sustained were sustained in a fall subsequent to- the step accident.
For the reasons assigned, the 'judgment appealed from is affirmed.