POLSTON, C.J.,
dissenting.
I respectfully dissent because I conclude that the Fourth District’s decision does not conflict with any of the cases cited by the majority. Therefore, there is no basis for this Court to exercise jurisdiction.
In Cox v. St. Josephs Hospital, 71 So.3d 795, 801 (Fla.2011), this Court set forth the standard for a directed verdict, explaining that a defendant is entitled to a directed verdict when “the plaintiff has failed to provide evidence that the negligent act more likely than not caused the injury.” This Court has explained that this means the plaintiff
must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.
Gooding v. Univ. Hosp. Bldg., Inc., 445 So.2d 1015, 1018 (Fla.1984) (quoting Pros-ser, Law of Torts § 41(4th ed. 1971) (footnotes omitted)).
In this case, the Fourth District applied the directed verdict standard and found that Friedrich had failed to establish that a six-month inspection more likely than not would have prevented the injury because there was no “evidence establishing when the flex-test would have revealed the defect in the chair prior to the injury.” Fetterman & Assocs., P.A. v. Friedrich, 69 So.3d 965, 968 & n. 2 (Fla. 4th DCA 2011). Although the majority states that Fried-rich’s expert testified that “a ‘hands-on inspection of the chair before the accident should have found’ the ‘weak joint’ in the rear, right side of the chair,” the majority fails to mention that this same expert explained on cross-examination that he had no opinion as to how quickly the failure in the chair joint occurred and that the weakened condition could have manifested in a matter of seconds, minutes, hours, days, or weeks prior to the accident. See majority op. at 8-9. Further, this expert conceded that the defect may not have been detectable by an inspection until just before the collapse and offered “no time frame concerning how long before the accident such testing would have been effective.” Fetterman, 69 So.3d at 968. As a result of this testimony, the Fourth District found, that “[e]ven if the jury concluded that due care required Fetterman to inspect its chairs at regular six-month intervals, the jury had no basis from which to conclude that Fetterman would have discovered the defect in the chair without receiving evidence as to how long before the accident *368 flex-testing would have revealed the defect.” Id.
Because the Fourth District simply applied the directed verdict standard to the unique circumstances of this particular expert’s testimony and said nothing that expressly and directly conflicts with this Court’s decisions in Cox and Gooding, this Court does not have jurisdiction. The majority appears to extrapolate conflict between the Fourth District’s decision and this Court’s decisions in Cox and Gooding because it would have reached a different result, which is not a proper basis for this Court’s jurisdiction.
Furthermore, although the majority’s decision does not directly address how the Fourth District’s decision conflicts with the other alleged conflict cases it cites, there is no conflict with these cases because they are factually distinguishable. Specifically, none of the alleged conflict cases involve similar testimony from the plaintiffs expert. Additionally, in Fontana v. Wilson World Maingate Condominium, 717 So.2d 199, 200 (Fla. 5th DCA 1998), the defect in the chair “would have been discovered upon a reasonable inspection,” and there was some evidence which indicated that the chair had not been used for some time prior to the accident. Similarly, in Schneider v. K.S.B. Realty & Investing Corp., 128 So.2d 398, 399 (Fla. 3d DCA 1961), the district court held that whether the hotel’s inspection was reasonable and should have revealed the defect was a question for the jury given that it could be inferred that the chair was defective since it was brand new and “fail[ed] to bear the weight of its first user.” Likewise, in Yuniter v. A & A Edgewater of Florida, Inc., 707 So.2d 763, 764 (Fla. 2d DCA 1998), the district court held that “whether the motel’s inspection of the chair was reasonable was for a jury to determine” and noted that there was a “genuine issue of fact [as to] whether [the guest] could have discovered the danger the chair posed through the exercise of due care” since she had occupied the motel room for over a week. Here, the circumstances are entirely different because the defect was hidden, “a visual inspection would not have revealed the defect,” the chair was not brand new and had been used almost daily without incident prior to the accident, and there was testimony that the defect may not have been detectable until just before the collapse. Fetterman, 69 So.3d at 966, 967.
Accordingly, there is no express and direct conflict, and I would discharge the case.
CANADY, J. concurs.